```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

UNITED STATES OF AMERICA            :

    v.                               :    Criminal No. DKC 09-0182

JHONTE NORRIS BRAWNER,JR.           :

**MEMORANDUM OPINION**

    Presently pending and ready for resolution is the motion for imposition of a reduced sentence pursuant to Section 404 of the First Step Act filed by Jhonte Norris Brawner, Jr. (ECF No. 82). The Government responded in opposition, (ECF No. 85), and Mr. Brawner replied (ECF No. 88).

    On December 19, 2009, Mr. Brawner pleaded guilty to the charge of possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a) and b(1)(B)(iii). The offense conduct occurred in August 2007. Although the guidelines reflected a range of 78 to 97 months, he was sentenced to 120 months of imprisonment, the applicable mandatory minimum at the time. A period of five years of supervised release was to follow. Sentence was imposed on March 8, 2010 by Judge Roger Titus.

    Mr. Brawner was on release during at least a portion of the time prior to adjudication of the federal charge. On December 9, 2009, two days before he entered his guilty plea, Mr. Brawner was arrested in Charles County for drug offenses. At some point, Mr. Brawner was convicted in the Circuit Court for Charles County and

given an 8-year consecutive sentence.  He served the federal sentence and was transferred to state authorities on April 26, 2019.  He says that his current projected release date is January 1, 2026, with a maximum expiration date of April 26, 2027.

Mr. Brawner seeks a reduction of his already served federal sentence to 63 months, which he asserts is the top of the applicable guideline range, followed by a reduced, four-year term of supervised release.  He expects that the result of a reduced term for the federal offense will be a new, backdated start of his consecutive state sentence, and earlier eligibility for parole.  The Government opposes the requested relief, arguing that the motion is moot because he has already served his federal sentence.

Resolution of this motion requires examination of jurisprudence concerning a variety of related criminal sentencing issues.  First, the parties are correct that Mr. Brawner is eligible for consideration because he was sentenced for a covered offense and has not previously been granted, or denied, relief. Second, under the First Step Act, it is possible and permissible (although not always wise) to grant a sentence reduction below the time already served, and thus the motion is not moot.  The policy considerations governing whether to grant a sentence reduction to less than the time already served differ depending on what use a defendant may be able to make of the "banked" time that results from a reduction below the time actually served.  Third, the 18

U.S.C. § 3553(a) sentencing factors, as they relate to Mr. Brawner, need to be assessed.

Section 404 of the First Step Act, provides: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Mr. Brawner was convicted pursuant to 21 U.S.C. § 841(a)(1) and sentenced pursuant to § 841 (b)(1)(A)(iii), and none of the limitations apply to him.  Thus, he is eligible for consideration. *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019).  Mr. Brawner is not in the typical situation of still serving a sentence for a covered offense, nor is he serving a sentence arising from revocation of supervised release.  *See United States v. Venable*, 943 F.3d 187 (4th Cir. 2019).  Rather, he has fully served the 120-month federal sentence previously imposed, but has not yet started supervised release because he is currently serving a state sentence imposed to run consecutive to the federal sentence.  He seeks a reduction so that he can, in effect, hasten his eventual release by using the overserved time on his federal sentence as a credit against the state sentence.

> When a defendant's sentence is vacated and the district court resentences the defendant to a term of incarceration less than the time he has already served, the defendant may have the option to "bank" the excess time served and credit that banked time toward a future sentence of incarceration imposed for violating the supervised release term of his sentence.

3

*United States v. Jackson*, 952 F.3d 492, 494 (4th Cir. 2020). Thus, at the very least, the motion is not moot because there is still relief available (additionally, the term of supervised release could be subject to reduction).

There may also be other scenarios under which Mr. Brawner may obtain a benefit if the sentence is reduced below the time already served. "[T]he question of whether and under what circumstances a prisoner who has served time under a conviction and sentence later held invalid is entitled to credit for that time against another sentence . . . may arise in a variety of situations which need to be distinguished." *Miller v. Cox*, 443 F.2d 1019, 1020 (4th Cir. 1971). The easiest to resolve is when a person is retried and convicted of the same offense, where the time served under the vacated conviction must be credited toward the new sentence. *North Carolina v. Pearce*, 395 U.S. 711 (1969). The United States Court of Appeals for the Fourth Circuit also ruled, some decades ago, in the situation involving "a prisoner serving consecutive sentences on several convictions [who] succeeds in having one of the sentences invalidated after it has been fully or partially served." *Miller*, 443 F.2d at 1020. In that situation, "the state must credit the sentences remaining to be served on the valid convictions with the time served under the voided conviction." *Id.* (citing *Tucker v. Peyton*, 357 F.2d 115 (4th Cir. 1966)). On

4

the other hand, if an individual serves a sentence that is later invalidated, is released, and then commits a new offense, he or she is not entitled to credit on the new sentence. *Id.* at 1021 (*citing Sills v. Peyton*, Mem.Dec. 12,045 (4th Cir. 1968)). A person serving a sentence for revocation of supervised release, however, can receive credit:

> BOP has created extensive regulations concerning its duty to calculate sentences, including the treatment of banked time. Among other things, BOP's regulations provide that "[a]ny prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the revocation term" when a defendant is sentenced to a term of incarceration for violating his supervised release. BOP Program Statement § 5880.28, *Sentence Computation Manual-CCCA of 1984* (1999) at 1-69. For example, if a defendant's term of incarceration is partially vacated and as a result the defendant has served more time than necessary, the defendant may credit the excess time against future revocations of his supervised release term under the same sentence.

*Jackson*, 952 F.3d at 498.

Mr. Brawner is now serving a state sentence. He seeks a reduction in the term of an already served federal sentence. He says it is an administrative adjustment only, as in *Tucker* and *Miller*, but it is clearly more complicated. Those cases involved consecutive sentences in the same jurisdiction. Mr. Brawner's situation obviously involves different jurisdictions. This court would have to issue an amended judgment, provide it to the Marshal for transmission to the Bureau of Prisons, which would need to be

asked/directed to notify the state authorities of a new, retroactive release date, and then the state authorities would have to agree to recalculate and give Mr. Brawner credit for time served in federal prison against his state sentence.  And, if Mr. Brawner is not given credit by the State of Maryland for any "banked time" on this conviction, then he would, presumably, have that time available should he ever violate supervised release and receive a revocation sentence.  The undersigned agrees with those courts that have worried that such "banked time" for use if supervised release is revoked runs counter to the goals of rehabilitation and deterrence.  That concern is, hopefully, not present in this case because the law provides for credit to be applied to the Maryland sentence.

Maryland law provides for credit against a sentence for time spent in custody: "A defendant who is serving multiple sentences, one of which is set aside as the result of a direct or collateral attack, shall receive credit against and a reduction of the remaining term . . . for all time spent in custody under the sentence set aside[.]"  Md. Code Ann., Crim. Proc. § 6-218.  In *Chavis v. Smith*, Judge Northrop adopted the report and recommendation of Magistrate Judge Klein and held that the predecessor Maryland statute to § 6-218 required credit for "time spent in any state's custody."  834 F.Supp. 153, 159 (D.Md. 1993).  As a result, the court ordered the state authorities to grant Mr.

6

Chavis credit for a portion of time spent incarcerated in Georgia which was "dead time." The term "dead time" means time spent in prison uncredited to any valid criminal conviction. *Id.* In *Fenton v. State*, the Court of Special Appeals of Maryland noted:

> The plain language of CP § 6-218(b) and the General Assembly's intent, as recognized in *Fleeger* [*v. State*, 301 Md. 155, 165 (1984)], require that credit be given for time served regardless of the state(s) of confinement. *Wilson v. Simms*, 157 Md.App. 82, 96 ("All of the subsections [of CP § 6-218] apply to time spent in custody in other jurisdictions." (citing *Chavis v. Smith*, 834 F.Supp. 153, 159)), *cert. denied, Wilson v. State*, 382 Md. 687 (2004).

2018 WL 2446973, at *6 (Md.App. May 30, 2018). Thus, if the federal sentence is reduced, creating "dead time," it appears that Maryland law would require that Mr. Brawner receive credit against the 8-year state sentence he is presently serving. Counsel for Mr. Brawner represents that the Director of the Office of Commitment Services for the Maryland Department of Correction confirmed that the state sentence should be recalculated to begin on the date the federal sentence ends. (ECF No. 88, at 4-5).

The sentencing factors must be assessed as they exist today. Mr. Brawner was sentenced to 120 months in prison for an offense involving between 50 and 150 grams of cocaine base. The actual quantities set forth in the statement of facts total 115.3 grams. Without the mandatory minimum, his guidelines range at the time of sentencing was 78 to 97 months. That range reflected an offense level of 30, with a three-level reduction for acceptance of

7

responsibility, and a criminal history category of II. Currently, the guidelines range would be 51 to 63 months. This range reflects a lower offense level of 26, with the same three-level reduction for acceptance of responsibility and criminal history category of II. Of course, it would not be appropriate to overlook the circumstances of this offense, or his prior conviction in 2008 for similar misconduct. The fact that Mr. Brawner committed another similar offense just two days before entering his guilty plea in this case, for which he is now serving an 8-year state sentence, presents an additional wrinkle to the sentencing milieu. That offense involved 18 grams of cocaine. Under § 5G1.3 of the Guidelines, when a defendant is subject to an undischarged term of imprisonment, the court is to examine whether the other offense is relevant conduct to the instant offense. If it is, an adjustment in the length of the sentence or imposition of concurrent time might be appropriate. Otherwise, the court may impose the sentence partially or fully concurrently or consecutively. Here, of course, the state court judge has already determined that the state sentence will be served consecutively to the instant offense. And that judge knew of the 10-year sentence imposed in this case, and so determined that Mr. Brawner deserved a significant additional sentence for the subsequent offense. The subsequent offense would qualify as relevant conduct, inasmuch as it is conduct of the defendant that is part of the same course of conduct or common

scheme or plan.  The type and quantity of substance involved probably would not have affected the guideline range, although the court has not carefully calculated the converted drug weight.  The fact that the subsequent offense occurred while Mr. Brawner was on pre-trial release, had signed a plea agreement, and was scheduled to enter that plea two days later is certainly an aggravating factor.

While incarcerated, Mr. Brawner has taken a variety of classes and worked.  He has a minor disciplinary record.  His release plan, even though it is some time off, is supported by his family.  Although he has no firm employment plans or prospects, he has some ideas for earning a living.  The Government has not directly addressed the sentencing factors.

Mr. Brawner is deserving of a reduction, both because the sentencing landscape is much different today for the offense conduct, and because of the interplay between this sentence and the undischarged term of imprisonment for the state offense.  Upon consideration of all of the circumstances, including his conduct while imprisoned, Mr. Brawner's sentence will be reduced to the time served up until April 26, 2015, followed by a reduced term of four years on supervised release.  Despite the Government's objection, four years on supervised release should be sufficient to assist Mr. Brawner's reentry.  Rather than impose a term of months that would require the BOP to calculate when he might have

9

been released, this method seems clearer and less cumbersome. It will enable the State of Maryland to identify the "dead time" between April 26, 2015 and April 26, 2019, and to recalculate Mr. Brawner's release date.

    A separate order and an amended judgment will be entered.

 

                                                    /s/
                              DEBORAH K. CHASANOW
                              United States District Judge